***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. The employer-employee relationship existed between plaintiff Rose Lassiter and defendant Goodyear Tire Rubber Co. prior to and on November 8, 1995.
4. Defendant Liberty Mutual is the servicing agent for the defendant-employer.
5. Plaintiff suffered an admittedly compensable injury on November 8, 1995.
6. Plaintiff received indemnity benefits pursuant to Goodyear's salary continuation plan for a lumbar strain from November 9, 1995 through her return to work on January 16, 1996.
7. Plaintiff has been continuously out of work since June 21, 1996.
8. Defendants completed a Form 60 (Employer's Admission of Employee's Right to Compensation) on October 25, 1996.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-six years old at the time of the hearing before the deputy commissioner, and a former employee of Goodyear Tire Rubber Co. (defendant) in Asheboro, North Carolina.
2. On November 8, 1995, plaintiff was removing and replacing filament spools, each weighing 35 pounds. As she attempted to place one of the spools on a shelf, she felt a pop in her back, felt immediate pain and was unable to move. Emergency medical personnel transported plaintiff to Moses Cone Hospital in Greensboro.
3. Plaintiff was prescribed medications and released to follow-up with a doctor of her choice.
4. On November 9, 1995, plaintiff consulted with Dr. Robert Scott, a family practitioner.
5. Dr. Scott recommended that plaintiff see a neurologist for possible epidural steroid injections.
6. On January 10, 1996, plaintiff saw Dr. S. Scott Stewart, a neurologist. Dr. Stewart performed a trigger point injection and recommended that plaintiff continue physical therapy and work hardening.
7. Plaintiff returned to work on January 16, 1996 while under light duty restrictions.
8. Plaintiff continued to consult with Dr. Scott and Dr. Stewart from January 1996 until August 1996. Both doctors shared the goal of increasing her stamina and strength through non-operative procedures such as physical therapy and epidural steroid injections.
9. On June 21, 1996, defendant informed plaintiff that her light duty assignment could not continue and employer took her out of work.
10. Plaintiff has not worked for the defendant or any other employer in any capacity since June 21, 1996.
11. Plaintiff did not experience sustained relief from her low back pain. As a result, she sought additional help with Dr. Vincent Paul on November 6, 1996.
12. Dr. Paul, an orthopedic surgeon, who has extensive experience in treatment of back pain, opined that plaintiff's current low back symptoms were exacerbated by the November 8, 1995 compensable injury.
13. From March until September of 1998, Dr. Paul and Dr. Rick Holmberg also treated plaintiff for unrelated disc herniations at the C5-6 and C6-7, and bulges at C3-4 and C4-5 levels. Fusion was performed on May 21, 1998 and she was released from that condition on September 9, 1998.
14. During the same period of time plaintiff received treatment on her cervical spine, she continued to receive treatment for low back pain
15. Dr. Paul treated and monitored plaintiff on a regular basis from July until December 14, 1998, when he ordered an MRI of the lumbar spine, the results of which "showed multi-level disc desiccation, multi-level bulging disc, and a non-compressive right posterolateral subligamentous protrusion at L5-S1."
16. Over the next several months, plaintiff continued to receive conservative treatment from Dr. Paul, which consisted of pain medications, steroid injections and other diagnostic tests.
17. On June 12, 1999, Dr. Paul recommended surgery to repair a disc herniation at L5-S1.
18. Dr. Paul performed a hemilaminotomy at L5-S1 on July 20, 1999 to repair the disc herniation at L5-S1.
19. Plaintiff's recovery following the surgery included medication modification and pool therapy, although the relief that she received was not sustained. Dr. Paul referred plaintiff for a functional capacity evaluation.
20. The results of the FCE indicated plaintiff was "unable to lift up to 10 lbs." It also indicated that she could not engage in certain activities of work including standing, walking, bending, reaching climbing, squatting, kneeling and crawling. Therefore she did not qualify for work at any level including sedentary work.
21. After several months of pain management and increasing pain, plaintiff returned to Dr. Paul on August 9, 2000.
22. On November 1, 2000, Dr. Paul ordered a discogram in anticipation of a fusion surgery.
23. Dr. Paul referred plaintiff back to Dr. Holmberg for a consultation regarding lumbar fusion surgery.
24. Dr. Holmberg performed a fusion at the L5-S1 level.
25. Plaintiff has experienced little relief since her fusion surgery. She remains out of work and continues to have back pain. She continues to be treated with pain medications.
26. Plaintiff's average weekly wage was $635.46, which yields a compensation rate of $423.66.
27. Plaintiff was paid short-term disability benefits through a plan funded in part by the employer from June 1996 through June 1997, and received long term disability benefits after that date through a plan funded mostly by the employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On November 8, 1995, plaintiff experienced a compensable injury by accident arising out of and in the course of her employment with the defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's current lower back problems are a result of plaintiff's compensable injury of November 8, 1995, and plaintiff has been temporarily totally disabled since June 21, 1996 and continuing. N.C. Gen. Stat. §97-29.
3. Plaintiff's medical treatment for her compensable back injury was reasonably required to effect a cure, give relief, and to lessen plaintiff's period of disability and should be paid by the defendants. N.C. Gen. Stat. § 97-25.
4. Defendant is entitled to a credit for the number of weeks plaintiff was paid disability benefits to the extent that the plans were funded by the employer. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. The defendants shall pay to plaintiff on account of her temporary total disability, $423.66 per week from June 21, 1996 and continuing until the plaintiff goes back to work or until further order of the Commission. Subject to an attorney fee provided below, that amount that has accrued shall be paid to plaintiff in a lump sum.
2. Defendant is entitled to a credit for the number of weeks for short and long term disability payments made to plaintiff, according to the percentage that defendant funded the disability plan. Accordingly, where the plan was fully funded by the employer, defendant is entitled to take a credit for one hundred percent of each week disability was paid to plaintiff, and where the amount funded by the employer was a percentage less than one hundred, defendant is entitled to a credit for that percentage of the weeks plaintiff was paid under the disability plan. Defendant's entitlement to a credit is reduced by the attorney fee paid herein.
3. Defendant shall pay for all medical treatment incurred or to be incurred as a result of her compensable back injury. Said treatment includes treatment rendered by Dr. Paul and Dr. Holmberg to plaintiff's lower back.
4. An attorney fee of 25% of the compensation awarded to plaintiff in paragraph 1 of this award is approved. Of the accrued amount, the defendants shall deduct 25% and send directly to plaintiff's attorney. Plaintiff's attorney is also awarded twenty-five percent of the credit allowed defendant. Of the continuing amount, every fourth compensation check is to be sent to plaintiff's attorney.
5. Defendant shall pay the costs of this action, including an expert witness fee in the amount of $325.00 to Dr. Shawn Stewart, $385.00 to Dr. Rick Holmberg, and $425.00 to Dr. Vincent E. Paul.
This the 20th day of June, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER